IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANDRE HANDY, a/k/a ANDRE HARDY, | * * | |
| Petitioner, | * | Civil Action No. RDB-10-3437 |
| v. | * | Criminal Action No. RDB-08-0571 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Petitioner Andre Handy, a/k/a Andre Hardy ("Petitioner"), has filed a Motion to Vacate, Set Aside, or Correct Illegal Sentence (the "Motion to Vacate Sentence") pursuant to 28 U.S.C. § 2255 (ECF No. 36). Petitioner entered a plea of guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). That guilty plea was entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, with the government and Petitioner agreeing upon an 84-month sentence. Petitioner alleges violations of his Sixth Amendment right to effective assistance of counsel, specifically that in the course of plea bargaining negotiations, his counsel "failed to properly advise him" of sentencing enhancements based upon his two prior second degree assault convictions; and second, because his counsel did not seek to suppress evidence obtained based on an ostensibly invalid search warrant. The government filed its response in opposition to the Motion to Vacate Sentence (ECF No. 38), arguing that the treatment of Petitioner's prior convictions was appropriate at the time of his sentencing in 2009 in light of the law in effect

at that time, and further that his counsel's decision not to seek to suppress the evidence based on the defective warrant was within the realm of good judgment required to satisfy the Sixth Amendment.

Subsquent to filing the Motion to Vacate Sentence, on November 3, 2011, Petitioner filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3852(b) and 28 U.S.C. § 3553(a)(5) ("Motion to Reduce Sentence"). (ECF No. 50.)  On August 9, 2012, Petitioner filed a Motion for Appointment of Counsel ("Motion for Appointment"), based on the purported complexity of the legal issues involved in his defense. (ECF No. 54.)

This Court has reviewed the Motion to Vacate Sentence and the government's opposition thereto, the Motion to Reduce Sentence, and the Motion for Appointment, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons stated below, Petitioner's Motion to Vacate, Set Aside, or Correct Illegal Sentence pursuant to 28 U.S.C. § 2255 is DENIED; the Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3852(b) and 28 U.S.C. § 3553(a)(5) is DENIED; and the Motion for Appointment of Counsel is DENIED.

## **BACKGROUND**

At his rearraignment on August 7, 2009, Petitioner pled guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Plea Agrmnt., ECF No. 26, at 1.)  He agreed to a statement of facts including details of the offense as follows.

On May 22, 2008, law enforcement officers with the Baltimore City Police Department observed a 2006 Dodge in which the driver, later identified as Petitioner, was

not wearing a seat belt. (*Id.* at 4.) The officer pulled the vehicle over and noticed Petitioner placing an object on the back seat of the car as he approached. (*Id.*) Petitioner then placed the vehicle in reverse and struck the officer's vehicle, at which point the officer instructed Petitioner and his passenger to "exit their vehicle for officer safety." (*Id.*) The officer was able to see in plain view in the back seat a digital scale with suspected cocaine residue. (*Id.*)

After officers secured the car for towing, they conducted an inventory search that led to the discovery in the trunk of a back pack; a plastic shopping bag containing "dozens of bundles" of United States currency (later found to be approximately $92,000); a second digital scale with a spoon with suspected cocaine residue; and a receipt for Rolling Road Mini Storage, Unit C-117. (*Id.*) Officers went to the storage unit with a K-9 dog, which gave a "positive alert for narcotics," and officers obtained a search warrant for the unit from the Circuit Court for Baltimore City. (*Id.*) Inside the storage unit, law enforcement officers discovered the following items: personal papers in the name of Andre Handy; a 223 Eagle Gun company, Model EA gun with a clip of 5.56mm bullets; a 223 Bushmaster Firearms Model XM15E2S rifle with a clip of .223 caliber bullets; a magazine with seven .45 caliber bullets; a large black safe with suspected cocaine residue; and approximately $50,000 in United States currency. (*Id.*)

Petitioner was indicted on two counts, Count I for being a felon in posession of a firearm in violation of 18 U.S.C. § 922(g)(1), and Count II for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841. (Special Criminal History Report, Opp'n. Exh. 3, at 1.) Petitioner appeared before this Court on August 7, 2009, and pled guilty to Count I. (Plea Agrmnt. at 1.) Had he gone to trial, based on his criminal

history he faced a sentence of 140 to 175 months as to Count I, and 360 months to life if found to be a career offender as to Count II. (Opp'n. at 3.) On October 23, 2009, he was sentenced to a term of 84 months in prison. (Judgment, ECF No. 32.)

According to the Presentence Report, Petitioner has a criminal history that extends back to 1997 and includes numerous convictions.[1] (Presentence Rep., Opp'n. Ex. 2, at 5.) In two of these instances – on January 5, 1996 and again on June 3, 1999 – Petitioner attempted to elude police by striking them with his vehicle. Specifically, according to the application for statement of charges in the first of these instances (hereinafter the "1996 incident"), Petitioner was stopped by police and after putting his hands up while sitting in the driver's seat of his vehicle, "without notice[] gunned his vehicle at [the law enforcement officer.]" (Application for Statement of Charges, Opp'n. Ex. 4, at 2.) Petitioner ultimately pled guilty to second degree assault after originally being charged with first and second degree assault. (Opp'n. at 8-9.)

In the second incident (hereinafter the "1999 incident"), after the vehicle that Petitioner was driving (later found to be stolen) was stopped when law enforcement officers blocked his way by placing unmarked police vehicles placed in front of and behind it, Petitioner attempted to back over a law enforcement officer and struck both vehicles with his own in an attempt to get away. (Application for Statement of Charges, Opp'n. Ex. 5, at

---

[1] Specifically, the Presentence Report details the following incidents in which Petitioner was charged in either the District Court or Circuit Court for Baltimore City and found guilty (omitting charges on which Petitioner was found not guilty, and also omitting prior history as a juvenile): January 1997, driving with a suspended license and second degree assault; April 1998, possession of marijuana; October 2001, unlawful possession; April 2004, eluding police; November 2005, driving with a suspended license; May 2005, possession of marijuana; September 2005, driving with a suspended license; February 2006, attempting to elude police. (Presentence Report, Opp'n. Ex. 2, at 5-8.) The report also refers to fifteen incidents of "other criminal conduct" on the part of Petitioner including charges of theft, battery, possession with intent to distribute, possession of a handgun, and disorderly conduct, which were all placed on the stet docket or a nolle prosequi was entered. (*Id.*)

4

2.) In the 1999 incident, Petitioner was originally charged with attempted murder but pled guilty to second degree assault. (Opp'n. at 9.)

One month after Petitioner's arraignment in this case, on May 21, 2009 his counsel filed a Motion to Suppress Tangible Evidence, Derivative Evidence, and Statements (ECF No. 14), in which it was asserted that "[a]ny search and seizure warrant(s) were issued by a judge who did not have authority and/or jurisdiction to issue said warrant(s)." (*Id.* at 2.) According to the government, subsequently there were "lengthy discussions" about federal law regarding the question of whether the warrant, which was issued in Baltimore City, was valid for a search that took place in Baltimore County. (Opp'n. at 14.) The government points out that those discussions between Petitioner's counsel and the government impacted not just the question of whether he would plead guilty, but also his potential sentencing. That is, had motions been filed but not succeeded and a plea entered closer to trial, Petitioner could have lost the two level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) with which he was credited during sentencing. (*Id.*)

Petitioner ultimately pled guilty to one count of being a felon in possession of a firearm. (Plea Agreement at 1.) In the plea agreement, the "parties stipulated and agree[d] pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 84 months imprisonment ... is the appropriate sentence in this case." (*Id.* at 5.)[2]

---

[2] Rule 11(c)(1)(C) provides that the attorneys for the government and the defendant may discuss and reach a plea agreement, and that if the defendant pleads guilty, "the plea agreement may specify that an attorney for the government will ... (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case ... (such a recommendation or request binds the court once the court accepts the plea agreement)."

## **APPLICABLE LEGAL STANDARD**

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). In order to establish a claim for ineffective assistance of counsel under section 2255, a defendant must prove both elements of the test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, the defendant must establish that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 689. Second, a defendant must show that counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." Id. at 687. To establish this level of prejudice, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

When a defendant alleges ineffective assistance after a guilty plea has been entered, the burden is even greater. In *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988), the Fourth Circuit explained the logic behind *Strickland* as follows:

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hooper*, 845 F.2d at 475 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985))**.** Moreover, in order to prevail a petitioner must overcome the presumption that the challenged action may be

considered an appropriate and necessary strategy under the circumstances. *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995).

## DISCUSSION

I.  Ineffective Assistance of Counsel Claim

A.  Career Offender Status

Petitioner contends that his plea counsel "misrepresent[ed] to Petitioner the sentencing enhancements for his two prior second degree assault convictions." (Motion to Vacate Sentence, ECF No. 36, at 7.) Specifically, Petitioner claims that he was improperly led to believe that if he had proceeded to trial, the government could use his two prior second degree assault convictions to qualify him as a career offender, which in turn would lead his criminal history category to be a "VI, which in turn would permit the government to seek a sentence accordingly." (*Id.* at 7-8.) Petitioner claims that absent written plea agreements or transcripts, his two convictions could not have been used, and therefore

> there does not exist any adequate basis to conclude, *beyond a reasonable doubt*, that [Petitioner's] two second degree assault convictions involved his voluntarily admitting to, and the court so finding, that he entered the guilty [pleas] voluntarily, with an understanding of the nature of the charge[s], that the two second degree assaults qualified as 'crimes of violence,' as defined in [United States Sentencing Guideline] § 4B1.1(a).

(*Id.*) (brackets in original). Petitioner invokes the decision of the United States Court of Appeals for the Fourth Circuit in *United States v. Harcum*, 587 F.3d 219 (4th Cir. 2009), as precedent for this assertion. In *Harcum*, the defendant was convicted of being a felon in possession of a firearm and his sentence was enhanced under the Armed Career Criminal Act ("ACCA"), which mandated a minimum fifteen-year sentence where the defendant had three previous convictions for a "violent felony." *Id.* at 220. The Fourth Circuit vacated the

sentence, reasoning that the sentencing court lacked sufficient evidence to determine that the crime of which the defendant had been convicted in state court constituted a "violent felony" within the meaning of the ACCA. *Id.* at 225.[3]

The government argues first, that the statements of charges in both the 1996 and the 1999 incidents were sufficient to lead Petitioner's counsel to believe a court could determine Petitioner was a career offender, and "[r]ather than risk that determination by the court, defense counsel sought a plea on count one of the indictment rather than count two. Counsel engaged in lengthy plea negotiations with the [g]overnment and was able to secure an 11(c)(1)(c) plea to 84 months." (Opp'n. at 10.) Moreover, the government points out that the *Harcum* opinion was not decided until November 17, 2009, a month after Petitioner's sentencing on October 23, 2009. (*Id.*).

Petitioner's claim fails based on his inability to show the requisite prejudice under *Strickland*. Where a defendant claims plea counsel should have objected to calculation of guidelines, the court will examine "whether, but for the lapse, there is a reasonable probability the sentence would have been the same." *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002). Here Petitioner cannot show he would have insisted on going to trial absent the characterization of the 1996 and 1999 incidents that led to a determination of his status as a career criminal, or that his sentence would have been different if he had done so.[4]

---

[3] The Court pointed out that the government had not proven that the Statement of Charges (in which the nature of the crime as violent was evident) was incorporated into the Information (which lacked sufficient factual allegations to justify classifying the crime as violent for purposes of the ACCA). *Id.* at 224. Moreover, the Information formed the basis of the conviction and was actually part of a proceeding that had been initiated in a different court than that where the Statement of Charges was filed, thus adding to the ambiguous character of the crimes. *Id.*

[4] Petitioner appears not to be challenging the effectiveness of his counsel, but the underlying substantive sentencing decision. The sentence he received was based on the Presentence Report that factored in his two prior convictions, and formed the basis of this Court's calculations. Counsel's assistance cannot be ineffective if the sentencing calculations of which Petitioner complains are those that this Court used in any event. *Strickland*, *supra*, 466 U.S. at 694.

Moreover, Petitioner has not shown that the statement of charges was insufficient at the time of sentencing to characterize him as a career offender. Given that the questioned representation occurred prior to issuance of the *Harcum* decision, Petitioner has shown no reason that his counsel should have anticipated that the statement of charges in either the 1996 or 1999 incidents might be deemed inadequate to demonstrate that those two convictions were crimes of violence. Moreover, whereas in *Harcum* there was a disconnect between the facts alleged in the Statement of Charges and the Information, here the Application for Statement of Charges in each incident could not have been more clear that Petitioner attempted in each instance to strike a law enforcement officer with a moving vehicle – a crime of violence no matter how those facts are interpreted.

Finally, it must be remembered that at this juncture, Petitioner's claim is presented merely as a claim on collateral review – *i.e.*, through an ineffective assistance of counsel claim after his own entry of a guilty plea. In evaluating such a collateral claim, the court is to "judge the reasonableness of counsel's challenged conduct on the facts of a particular case, *viewed as of the time of counsel's conduct*." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Strickland*, 466 U.S. at 690) (emphasis added). Because Plaintiff cannot demonstrate that his counsel acted unreasonably in light of both the overall character of the prior crimes and applicable law at the time, he cannot establish an ineffective assistance of counsel claim with respect to treatment of his prior convictions during the plea process.

      B.    Failure to Suppress

Petitioner contends that the warrant in this case was invalid because it was signed in Baltimore City and executed in Baltimore County, where the judge who signed it lacked

9

jurisdiction. (Motion at 13.) For this proposition, he cites *Gattus v. State*, 204 Md. 589 (1954), in which the Court of Appeals of Maryland held that a search made pursuant to a warrant "must be made within the limits of the jurisdiction of the judge or justice of the peace issuing the same." *Id.* at 595.

The government, on the other hand, argues that under *United States v. Leon*, 468 U.S. 897 (1984), the good faith exception to the warrant requirement would have permitted admission of the evidence in question had the case proceeded to trial. (Opp'n. at 11.) It argues that even if there were a violation of state law in the course of issuance of the warrant, such a violation would not necessarily compel exclusion of evidence obtained pursuant to a search under the warrant based on federal law. (Opp'n. at 12.) *See United States v. Clutchette*, 24 F.3d 577 (4th Cir. 1994).

Petitioner properly points out that *Gattus*, *supra*, imposed a requirement for state criminal proceedings in the 1950s that necessitated issuance of a warrant by a judge of the circuit court within the jurisdiction where it was to be carried out. He overlooks, however, the impact of the United States Supreme Court's decision in *Leon*, *supra*, its effect on *federal* criminal evidentiary law, and finally, the fact that he comes before this Court not in a suppression hearing, but on a collateral matter, his right to effective assistance of counsel.

Petitioner does not contend that probable cause did not exist with respect to the warrant, that it lacked particularity, or that it had any other facial defects.[5] Rather, he cites *Gattus* just for the proposition that a warrant issued by a circuit court judge is invalid in

---

[5] Petitioner does make a perfunctory argument that the officers' failure to issue a citation because he was not wearing a seat belt suggests that they did not have a legitimate reason to stop him in the first instance. (Motion at 16.) He overlooks, however, that his first response upon one of the officer's approaching his vehicle was to try to run him over – which understandably might prove a sufficient distraction that the officer neglected to issue a citation and moved on to more pressing matters.

10

another jurisdiction. (Motion at 13). The *Gattus* opinion, however, was handed down by the Maryland Court of Appeals nearly 50 years ago, and indeed that same court has suggested that the ruling in *Gattus* might not withstand the test of time. *See Birchead v. State*, 317 Md. 691, 699 (1989) (noting that whether the *Gattus* court's holding "was correctly decided is a matter which we need not consider today"). Moreover, in light of the good faith exceptions set forth in *Leon, supra*, Petitioner cannot demonstrate that the evidence in question would have been suppressed.

The Court explained in *Leon* that evidence obtained under even a "subsequently invalidated" warrant need not be suppressed where the warrant was acted upon in good faith, because the deterrent purpose of the exclusionary rule is "not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith' within the scope of a search warrant issued by a magistrate." *Id.* The *Leon* Court laid out four circumstances under which an officer's reliance on an invalidated warrant would not qualify as "objectively reasonable": (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned" his detached and neutral judicial role; (3) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

Petitioner may have put it best when he pointed out that, with respect to suppression, "*there is no per se rule.* Whatever is admissible must be determined on a 'case-by-case' basis and [suppression should] only [be ordered] in those unusual cases in which exclusion will further the purposes of the exclusionary rule." (Motion at 14 (brackets and quotations in original) (emphasis added).)  Here Petitioner has failed to demonstrate that any evidence obtained from a search based on an invalid search could have been suppressed based on application of any of the four exceptions to the good faith rule.

Moreover, the issue before this Court is not whether the underlying search warrant was invalid, or indeed whether *Leon* applies as a matter of law.  Rather, the issue is a collateral one, to wit, whether Petitioner's *plea counsel* acted appropriately in not filing a motion to suppress specifically with respect to evidence obtained as a result of a warrant that Petitioner claims was defective.  Notably, Petitioner's counsel did file a motion to suppress that would have allowed him to pursue the issue had he not pled guilty under Rule 11(c)(1)(C). (ECF No. 14, Motion to Suppress, at 2.)  His counsel had the right to make a strategic decision to pursue or not pursue certain motions depending on whether a plea seemed likely.  Counsel had preserved the right to do so by filing the initial motion to suppress (ECF No. 14), and the government states that in the underlying case, there were "lengthy discussions" about federal law regarding the suppression issue (Opp'n. at 14). Whatever defense counsel may have decided, that was a strategic call well within the ambit of his role as Petitioner's attorney. *See Premo v. Moore*, 131 S.Ct. 733, 741 (2011) (noting, in the context of an ineffective assistance of counsel claim, that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful

strategic choices in balancing opportunities and risks"). As the government puts it, "not only were [Petitioner's counsel's] decisions to not litigate pre-trial motions competent, they undoubtedly provided [him] with several years of freedom." (Opp'n. at 14.)

Because Petitioner has failed to demonstrate pursuant to 28 U.S.C. § 2255 that his Sixth Amendment right to effective assistance of counsel has been violated, the Motion to Vacate, Set Aside, or Correct Illegal Sentence (ECF No. 36) is DENIED.

II.     Motion to Reduce Sentence

Petitioner filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3852(b) and 28 U.S.C. § 3553(a)(5) ("Motion to Reduce Sentence"). (ECF No. 50.) He asks that this Court give retroactive effect to Amendment 742 of the Sentencing Guidelines. *See* U.S.S.G. Supp. App. C., amend. 742 (2010). Amendment 742 took effect on November 1, 2010, and eliminates a provision of the guidelines that had permitted for the adding of either one or two points to a defendant's criminal history where the defendant committed the underlying offense within two years of being released from a term of imprisonment of at least sixty days (commonly referred to as "recency points"). *See* U.S.S.G. § 4A1.1(e).

Petitioner's request must be denied for two reasons. First, he has not demonstrated that Amendment 742 would have any effect on his sentence. Although it does provide for eliminating recency points under § 4A1.1(e), it does not eliminate criminal history points added under § 4A1.1(d) – which adds points when a defendant was "under supervision" – *i.e.*, on probation – when he committed the underlying offense. *See id*; *see also United States v. Boone*, 2010 WL 4853289 (E.D.Va. 2010), at *1. In this case, according to the Presentence Report, two points were added to the Criminal History Computation based on Petitioner's

being on *probation* for "Driving Suspended, Case 0DG68508. Pursuant to U.S.S.G. § 4A1.1(d), two points are added." (Presentence Rep. at 8 (emphasis added).) In any event, the Commission did not make the amendment retroactive, *see* U.S.S.G. § 1B1.10(c) (2010), and Petitioner's sentencing took place on October 23, 2009, before enactment of Amendment 742.[6]

Given the inapplicability of Amendment 742 and the fact that it is not retroactive, Petitioner's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3852(b) and 28 U.S.C. § 3553(a)(5) is DENIED.

III.   Motion to Appoint Counsel

During the pendency of his Motion to Vacate, Petitioner has filed a Motion for Appointment of Counsel. (ECF No. 54.) Because Petitioner has adequately presented his claims and grounds for relief, there is no reason to appoint counsel at this time. There is no Sixth Amendment right to counsel in collateral proceedings. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987). A court may appoint counsel to a *pro se* litigant seeking § 2255 relief if the court determines "that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Rule 8(c) of the Rules Governing § 2255 Proceedings for the United States District Courts provides that a court must appoint counsel only "[i]f an evidentiary hearing is required." The interests of justice do not require appointment of counsel, and no evidentiary hearing is necessary. Accordingly, Petitioner's Motion for Appointment of Counsel is DENIED.

---

[6] Pursuant to section 3553(a)(4)(A)(2), district courts must use those guidelines in effect at the time of sentencing. 18 U.S.C. 3553(a)(4); U.S.S.G. § 1B1.11; *see also United States v. Dunphy*, 515 F.3d 237, 239 n.2 (4th Cir.), *cert. denied*, 129 S.Ct. 2401 (2009).

## **CONCLUSION**

For the foregoing reasons, Petitioner's Motion to Vacate Sentence or Correct Illegal Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 36) is DENIED.  Petitioner's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3852(b) and 28 U.S.C. § 3553(a)(5) (ECF No. 50) is DENIED.  Petitioner's Motion for Appointment of Counsel (ECF No. 54) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order.  *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.


Dated:     December 18, 2012

                                                                  /s/
                                                       Richard D. Bennett
                                                       United States District Judge